UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MLC INTELLECTUAL PROPERTY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICRON TECHNOLOGY, INC., et al.,<br><br>Defendants. | Case No. 19-cv-03345-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MICRON, MICRON SEMICONDUCTOR, AND MICRON CONSUMER'S MOTIONS TO DISMISS; AND FINDING IM FLASH'S MOTION TO DISMISS MOOT**<br><br>Docket Nos. 33, 38, 39, 64s |

The instant case is a patent infringement action. The plaintiff is MLC Intellectual Property, LLC ("MLC"). MLC has sued Micron Technology, Inc. ("Micron") and nine affiliated entities, the bulk of which appear to be wholly-owned subsidiaries:

(1) Micron Consumer Products Group, Inc. ("Micron Consumer").

(2) Micron Semiconductor Products, Inc. ("Micron Semiconductor").

(3) IM Flash Technologies ("IM Flash").[1]

(4) Lexar Media, Inc. ("Lexar").

(5) Micron Semiconductor Asia Pte. Ltd. ("Micron Singapore").

(6) Micron Europe, Ltd. ("Micron Europe").

(7) Micron Japan, Ltd. ("Micron Japan").

(8) Micron Memory Taiwan Co., Ltd. ("Micron Taiwan").

---

[1] IM Flash does not appear to be a wholly-owned subsidiary. *See* FAC ¶ 6 (alleging that IM Flash "is a joint venture formed in 2006 with Intel Technologies . . . to manufacture NAND Flash memory products pursuant to which [Micron] owned 51% of [IM Flash]").

(9) Micron Semiconductor (Xi'an) Co., Ltd. ("Micron China").[2]

The first four subsidiaries are based in the United States. The remaining five subsidiaries are foreign companies. Micron and all subsidiaries shall hereinafter be referred to as the "Micron Defendants." According to MLC, the Micron Defendants infringe, directly and/or indirectly, the '571 patent.

Currently pending before the Court are three motions to dismiss. The motions have been filed by: (1) Micron; (2) Micron Semiconductor; and (3) Micron Consumer. These three defendants shall hereinafter be referred to as the "Moving Defendants." Micron Semiconductor and Micron Consumer shall hereinafter be collectively referred to as the "Micron Subs."

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motions to dismiss.

## I.   FACTUAL & PROCEDURAL BACKGROUND

As alleged in the operative first amended complaint ("FAC"), MLC is the owner of the '571 patent. The patent is titled "Electronically alterable non-volatile memo with N-Bits per cell." The invention claimed in the '571 patent

> generally relates to a multi-level electrically alterable non-volatile memory device that includes memory cells with more than two predetermined memory states. The device can be programmed, in accordance with input information, to one of a predetermined number of memory states. Each memory state has associated with it a reference voltage. A reference voltage can be selected based upon the input information (i.e., desired memory state), and the reference voltage can be compared to a voltage of the memory cell. A control signal is generated that indicates whether the cell has been programmed to the desired memory state. A programming signal can be controlled by the status of the control signal. Controlling the application of the programming signal is based upon the selected reference signal.

FAC ¶ 22.

MLC has sued both Micron and a number of affiliated entities for infringement of the '571

---

[2] It is not clear from the operative first amended complaint ("FAC") whether MLC also intended to sue one additional subsidiary, namely, Micron Semiconductor B.V. The company is named in the caption but is not otherwise mentioned in the pleading.

patent.

Prior to filing the instant action, MLC filed a suit for infringement of the same '571 patent against Micron only. This action – hereinafter referred to as *MLC I* – is still pending before Judge Illston. *See generally MLC I*, No. C-14-3567 SI (N.D. Cal.). *MLC I* has been heavily litigated. Judge Illston has conducted several claim construction hearings as well as hearings on several summary judgment motions. During *MLC I*, MLC tried to expand the scope of the litigation in at least two ways: (1) to add nine Micron subsidiaries as defendants and (2) to add new accused products based on Design IDs beyond the 13 that were undisputedly at issue in *MLC I*. Judge Illston rejected both of MLC's attempts.

In particular, Judge Illston made the following rulings that are relevant to the instant case.

**(1)** **Order on MLC's motion to amend.** In November 2018, shortly before the close of fact discovery, MLC moved for leave to file a first amended complaint. MLC wanted to add Micron's subsidiaries to *MLC I*. *See* Docket No. 233 (motion). All of the subsidiaries were the same as those in the instant case, *except* MLC did not mention Micron Taiwan and instead referenced Micron Semiconductor B.V. *See MLC I* (Docket No. 233) (motion). As noted above, it is not clear whether MLC intended to implicate Micron Semiconductor B.V. in the instant action. *See* note 2, *supra*.

In January 2019, Judge Illston denied MLC's motion to add Micron's subsidiaries to *MLC I*. She held that MLC's proposed "amendment is not appropriate because [it] would cause Micron undue prejudice and would create undue delay in this case"; in particular, "[t]he Court would have to reopen fact discovery and set an entirely new pretrial schedule" if it were to permit the amendment, plus the new defendants "would almost certainly file motions challenging the pleadings and jurisdiction and venue, particularly since five of the proposed defendants are foreign entities" and further "would likely seek to revisit claim construction and file additional summary judgment motions." *MLC I* (Docket No. 288) (Order at 2). Judge Illston added that, "[i]f MLC wishes to pursue claims against the subsidiaries (which MLC has previously asserted was unnecessary because MLC contends that Micron is liable for all allegedly infringing sales), MLC may do so in a separate lawsuit or lawsuits." *MLC I* (Docket No. 288) (Order at 2-3).

(**2**)     **Order on MLC's motion to compel discovery.**  In December 2018, after the close

of fact discovery, MLC filed a motion to compel discovery in *MLC I*.  The motion was related to

Design IDs.  Although MLC had claimed infringement based on specific Micron products, it

learned through discovery that Micron essentially "categorized" its products by Design ID.  Thus,

a given Design ID would cover multiple products.

In its motion to compel, MLC asked Judge Illston to compel Micron to provide

information for "*all* Design IDs for MLC/TLC NAND Flash devices."  *MLC I* (Docket No. 258)

(Mot. at 1) (emphasis in original).  According to MLC, the accused products in the case "were –

and always have been – *all* of Micron's MLC and TLC NAND Flash products."  *MLC I* (Docket

No. 258) (Mot. at 3) (emphasis in original), and, although Micron had previously identified 13

Design IDs to cover the accused products, it now appeared that there were some additional Design

IDs.

Micron opposed the motion to compel, arguing that MLC had not, in fact, accused "all

MLC/TLC NAND Flash products" and that the only relevant products were those specifically

identified in MLC's infringement contentions, all of which were covered by the 13 Design IDs.

*MLC I* (Docket No. 274-3) (Opp'n at 1) (arguing that "MLC's repeated attempt to use motions

practice to obtain discovery on unaccused products (especially after the close of fact discovery) is

a waste of the Court's and the parties' resources[;] [n]ow is not the time to relitigate this case anew

based on new discovery requested by MLC for products it did not accuse of infringement").

Micron also argued that MLC had not acted diligently to identify or accuse additional Micron

products.  *See MLC I* (Docket No. 274-3) (Opp'n at 14).

In January 2019, Judge Illston denied MLC's motion to compel discovery.  She noted that

the gist of MLC's argument was that Micron had "violated its discovery obligations by

withholding discovery regarding MLC/TLC products that correspond to other Design IDs aside

from the 13 Design IDs already produced."  *MLC I* (Docket No. 291) (Order at 2).  She also took

note of Micron's argument in response, *i.e.*, that "MLC [was] improperly seeking discovery on

products that it did not accuse in the complaint or in its infringement contentions."  *MLC I*

(Docket No. 291) (Order at 2).  Judge Illston ultimately agreed with Micron, holding that Micron

4

had "complied with its discovery obligations by producing discovery relevant to the Accused Devices." *MLC I* (Docket No. 291) ("Order at 3-4. She noted, *inter alia*, that MLC's complaint and infringement contentions never accused "'all' of Micron's MLC/TLC NAND flash products" of infringement; also, MLC was aware that the accused products were only part of a "larger universe of Micron's MLC and TLC NAND flash products," especially as Micron had repeatedly objected that MLC was asking for discovery about products not accused of infringement. *MLC I* (Docket No. 291) (Order at 3). Thus, Judge Illston effectively held that the scope of the litigation would, *at most*, relate to Micron products covered by the 13 Design IDs. (She deferred on ruling whether MLC could seek damages for Micron products not specifically identified in MLC's infringement contentions but still covered by the 13 Design IDs. *See MLC I* (Docket No. 291) (Order at 3) ("The Court leaves for another day whether MLC may seek damages for the broader group of products covered by the 13 Design IDs.").)

**(3)    Order on Micron's motion in limine.**  In April 2019, Micron filed a motion in limine.  In the motion, Micron asked Judge Illston "to preclude MLC from proffering [evidence or argument] regarding the non-party [Micron] subsidiaries and affiliates, their extraterritorial sales [and from] contest[ing] Micron's determination of what constitutes a foreign sale." *MLC I* (Docket No. 445) (Mot. at 1).  Micron took note that, previously, Judge Illston had denied MLC's motion to add the Micron subsidiaries as defendants to the lawsuit: "After denial of its motion for leave to amend, however, MLC apparently chose not to file a separate case, but rather to back door its damages claims against non-party subs into this case without meeting the legal requirements to justify doing so." *MLC I* (Docket No. 445) (Mot. at 2).  According to Micron, "MLC has neither pleaded nor provided any contentions that it is entitled to damages based on Micron's vicarious liability for the Non-Parties." *MLC I* (Docket No. 445) (Mot. at 4).

In June 2019, Judge Illston granted Micron's motion in limine.  She noted, *inter alia*, that "MLC has not demonstrated a legal or factual basis for seeking to hold Micron liable for non-party sales." *MLC I* (Docket No. 596) (Order at 2).  "In order to hold Micron liable for the sales of non-parties, MLC needs to piece the corporate veil," but "MLC's evidence of alter ego largely consists of Micron's SEC filings in which Micron reports consolidated financials and states, *inter alia*, that

it guarantees certain debts of its subsidiaries.  The Court finds that as a matter of law . . . this evidence, on its own, is insufficient to raise a triable issue of fact as to alter ego."  *MLC I* (Docket No. 596) (Order at 3).

## II.    DISCUSSION

A.    Claim Splitting

The Moving Defendants argue first for dismissal based on the doctrine of claim splitting. Claim splitting is, in effect, a "sub-species" of res judicata.  *Icon-IP PTY Ltd. v. Specialized Bike Components, Inc.*, No. 13-cv-03677-JST, 2013 U.S. Dist. LEXIS 189290, at *6 (N.D. Cal. Oct. 22, 2013).  The doctrine provides that a party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits.  *In re PersonalWeb Techs., LLC*, 2019 U.S. Dist. LEXIS 56804, at *49 (N.D. Cal. Mar. 13, 2019).  In other words, "[p]laintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (internal quotation marks omitted).  Claim splitting differs from res judicata in that, unlike res judicata, it does not require that there be a final judgment.  *See id.* at 689 (noting that, in considering whether a second action is duplicative for purposes of claim splitting, a court borrows from the test for res judicata and analyzes "whether, *assuming* that the first suit were already final, the second suit could be precluded pursuant to claim preclusion") (emphasis added); *see also Rivera v. Am. Fed'n of State*, 2017 U.S. Dist. LEXIS 110743, at *8-9 (N.D. Cal. July 17, 2017) (noting that a final judgment is not required for claim splitting).  "'A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim.'"  *In re PersonalWeb Techs.*, 2019 U.S. Dist. LEXIS 56804, at *49.

According to the Moving Defendants, MLC has engaged in claim splitting because the instant case is essentially duplicative of *MLC I*.  In addressing the Moving Defendants' argument, the Court addresses first whether there has been claim splitting with respect to Micron and then whether there has been claim splitting with respect to the Micron Subs.

1.  <u>Micron</u>

As noted above, to determine whether there has been impermissible claim splitting, a court considers "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689.

a.  <u>Same Party</u>

The same party requirement is easily met with respect to Micron.  Micron was the only defendant sued in *MLC I* and it is a named defendant in the instant case (*MLC II*) as well.  The critical question, therefore, is whether *MLC I* and *II* involve the same cause of action (*i.e.*, with respect to Micron).

b.  <u>Same Cause of Action</u>

There is no dispute that both *MLC I* and *II* concern alleged infringement by Micron of the same '571 patent.  MLC argues, however, that *MLC II* is not duplicative of *MLC I* because the accused products in each case are different: In *MLC I*, MLC is accusing Micron of infringement based on products covered by 13 specific Design IDs; in contrast, here (*MLC II*), MLC is asserting that Micron infringes based on a completely different Design ID, *i.e.*, the L94.

As the Court stated at the hearing, there are factual disputes related to the L94 products that bar resolution of the claim-splitting issue at this early stage of the litigation.  First, according to MLC, the L94 Design ID did not even exist at the at the time it filed its complaint in *MLC I* back in August 2014, and thus MLC could not have claimed patent infringement based on the L94 when it initiated *MLC I*.  MLC asserts that, even though the L94 was released during the pendency of *MLC I*, it was not thereby obligated to include the L94 as part of *MLC I*.  In support of its position, MLC relies primarily on *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.* 672 F.3d 1335, 1345 (Fed. Cir. 2012).  There, in discussing the related doctrine of res judicata, the Federal Circuit acknowledged that claims that *could* have been brought are precluded, but added that "claims that could have been brought are *claims in existence at the time the original complaint is filed*"; "[w]hile a party may seek to pursue claims that accrue during the pendency of a lawsuit, the party is not required to do so, and res judicata will not be applied to such accruing claims if the party elects not to have them included in the action."  *Id.* at 1345 (internal quotation marks omitted;

emphasis added). In response, Micron argues that MLC is factually wrong that the L94 did not exist at the time of the complaint. The problem for Micron is that this factual dispute cannot be resolved at the 12(b)(6) phase of proceedings.

Second, MLC argues that, even if the L94 Design ID did exist at the time it filed its original complaint in *MLC I*, it was not required to include the Design ID – or rather products covered by the Design ID – as a part of *MLC I* because the L94 products are materially different from the products covered by the 13 Design IDs at issue in *MLC I*. *See* FAC ¶ 69 ("This suit involves new Micron products that infringe the '571 Patent in a new way than those products accused of infringement in [*MLC I*].").  According to MLC, because the L94 products are materially different from the products at issue in *MLC I*, the instant case does not involve the same cause of action as that pled in *MLC I* – and thus there is no claim splitting. *See, e.g.*, *Icon-IP*, 2013 U.S. Dist. LEXIS 189290, at *7 (stating that, in the context of patent infringement, there is the same cause of action (for claim splitting purposes) where "'the accused device in the action before the court is "essentially the same" as the accused device in a prior action between the parties'"); *cf. Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008) (in addressing res judicata, stating that "[a]ccused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent'"). Similar to above, Micron challenges MLC's assertion that the L94 products are materially different. The Court, at this juncture, cannot resolve that factual dispute. *Cf., e.g.*, *SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 691 (M.D.N.C. 2011) (in discussing res judicata, stating that "whether a particular product is the same or essentially the same as [other products] is a question of fact that cannot be determined at the motion to dismiss phase").

Micron protests that MLC cannot try to bring the L94 into the instant case because, if MLC had acted with diligence, it could have litigated the L94 in *MLC I*. *See Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010) ("Claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action."); *see also Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) ("If the plaintiff is unaware of facts when filing a complaint, res judicata will not bar subsequent litigation. However,

a plaintiff will be precluded from raising these facts later if, by exercising due diligence, he or she could have discovered the relevant information before filing the initial suit."); *Dixon v. United States Postal Serv.*, No. C 10-4220 DMR, 2011 U.S. Dist. LEXIS 76052, at *13 (N.D. Cal. July 14, 2011) ("Res judicata includes claims that 'should have been raised in earlier litigation.' The party's actual knowledge of the claims is not required. Rather, what matters is if the party could have determined the issue through 'diligent discovery.' A party's own ignorance will only 'avoid the bar of res judicata' when that ignorance was caused by the 'misrepresentation or concealment of the opposing party.'"). Micron contends that MLC could have litigated the L94 in *MLC I* because, with reasonable diligence, MLC would have learned about products covered by the L94 and thus could have included the products in *MLC I* (*e.g.*, at the time of its infringement contentions).

But as noted above, *Aspex Eyewear* suggests res judicata (and hence claim splitting) applies to claims in existence at the time the complaint is filed. Even if the diligence requirement encompasses claims that could have been added at the time of its infringement contentions,[3] there are factual disputes as to when the L94 products were first released and whether the L94 products are materially different, or essentially the same, as the products at issue in *MLC I*. There may also be a factual dispute as to whether MLC would have learned about the L94 in the exercise of reasonable diligence (assuming that the L94 existed as of the time the *MLC I* complaint was filed). *See, e.g.*, Micron Mot. at 12 (arguing that "information about the L94 MLC NAND flash products was sitting on the Internet for years while MLC litigated the *MLC I* case" but not providing any evidence in support).

Micron also contends that MLC's lack of diligence is problematic also because MLC was

---

[3] Judge Tigar has suggested that, if the patent holder knew about an allegedly infringing product at the time it served its infringement contentions (which are supposed to define the relevant universe of infringing products), but failed to include that product in its infringement contentions, that would establish a lack of diligence on the part of the patent holder and would further indicate no prejudice from application of the claim-splitting rule. *See Adobe Sys. v. Wowza Media Sys., LLC*, 72 F. Supp. 3d 989, 994 (N.D. Cal. 2014) (Tigar, J.) (noting, that in a prior case, *Icon-IP*, 2013 U.S. Dist. LEXIS 189290, the court deemed that the plaintiff "had not been diligent in seeking to amend its infringement contentions, as it had been on notice of the additional [allegedly infringing] models from the beginning of the litigation"; because of the lack of diligence, the patent holder "would not be prejudiced by the application of claim [splitting]").

put on notice of the L94 in January 2019 (*i.e.*, when, in *MLC I*, Micron filed its opposition to MLC's motion to compel discovery on all Design IDs), but MLC still made no attempt to add the L94 to *MLC I* when it thereafter moved for leave to amend its infringement contentions. *See* Micron Mot. at 12; *see also MLC I* (Docket No. 307) (motion for leave to file first amended infringement contentions). However, by the time MLC moved to amend its infringement contentions (in February 2019), Judge Illston had ruled on MLC's motion to compel discovery (in January 2019) and made clear that, at most, *MLC I* would cover the 13 Design IDs that had always been at issue but nothing more. This was confirmed when Judge Illston ruled on the motion to amend infringement contentions, where she allowed MLC to add in more products to the lawsuit because they were all covered by the 13 Design IDs. *See* Docket No. 344 (Order at 8) ("MLC has shown good cause to accuse the additional products that are covered by the 12/13 Design IDs.").

### c.    Summary

For the foregoing reasons, the Court must deny Micro's Rule 12(b)(6) motion as to whether MLC has engaged in improper claim splitting by suing Micron in the instant case for infringement based on the L94 products.

### 2.    Micron Subs

The Court now turns to MLC's claim-splitting argument with respect to the Micron Subs. Again, to determine whether there has been impermissible claim splitting, a court considers "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689.

### a.    L94 Design ID

In the case at bar (*MLC II*), MLC has sued the Micron Subs for infringement based on the L94 Design ID *and* based on the 13 Design IDs at issue in *MLC I*. To the extent MLC has sued for infringement in *MLC II* based on the L94 only, there are, as noted above, factual disputes that cannot be resolved at this stage of the proceedings. That alone is a basis to reject the Micron Subs' claim splitting argument as to the L94, at least at this juncture of the litigation.

### b.    13 Design IDs at Issue in *MLC I*

To the extent MLC has sued for infringement in *MLC II* based on the 13 Design IDs at

issue in *MLC*, there is clearly the same cause of action: The products are not just "essentially the same" – they are exactly the same. The critical question is whether the Micron Subs constitute one of the same parties as in *MLC I*. *Cf. Headwaters Inc. v. United States Forest Serv.*, 382 F.3d 1025, 1030 (9th Cir. 2004) (in discussing res judicata, noting that "'[p]rivity between parties exists when a party is so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved' [;] '[e]ven when the parties are not identical, privity may exist if there is substantial identity between parties, that is, a sufficient commonality of interest").

According to the Micron Subs, because they are in privity with Micron – and Micron was clearly a defendant in *MLC I* – the same party requirement for claim splitting is satisfied. In response, MLC does not dispute that, ordinarily, a wholly-owned subsidiary is deemed in privity with its parent for claim splitting (or at least res judicata) purposes. *Cf., e.g.*, *In re Imperial Corp. of Am.*, 92 F.3d 1503, 1507 (9th Cir. 1996) (in discussing res judicata, rejecting FDIC's argument that "'the fact that one entity is a wholly owned subsidiary of another entity is insufficient to establish privity between the two entities for purposes of the defense of claim preclusion'"); *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (in discussing res judicata, noting allegation that parent had "controlling relationship" with subsidiary and stating that "this 'near alter ego' relationship would be sufficient to establish 'privity' between the two corporations"); *see also Sparks Nugget, Inc. v. CIR*, 458 F.2d 631, 639 (9th Cir. 1972) (in discussing collateral estoppel, citing approvingly Moore's Federal Practice for the proposition that "'the public policy underlying the doctrine of res judicata, as a bar to repetitious litigation, would support a finding of privity between a close corporation and its sole or controlling stockholder'"). Instead, MLC argues that the Micron Subs are judicially estopped from claiming that they are privies with Micron – in particular, because, in *MLC I*, Micron argued to Judge Illston that the Micron Subs are not alter egos of Micron.

MLC's argument is not convincing. "[The] equitable doctrine is intended to prevent litigants from playing fast and loose with the judicial system by successfully obtaining an advantage in court on one theory, and then switching to an inconsistent theory to gain another

advantage." *Arvin Kam Constr. Co. v. Envtl. Chem. Corp.*, No. 16-cv-02643-JD, 2019 U.S. Dist. LEXIS 64282, at *14 (N.D. Cal. Apr. 15, 2019). A court

> generally consider[s] three factors when determining whether to apply the doctrine of judicial estoppel. First, we determine whether "a party's later position [is] 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (citations omitted). Second, we inquire whether the party achieved success in the prior proceeding, since "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *Id.* (citation omitted). Finally, we consider whether the party asserting an inconsistent position would achieve an unfair advantage if not estopped. *Id.* at 751.

*USW v. Ret. Income Plan for Hourly-Rated Emples. of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir. 2008).

MLC's judicial estoppel argument founders on the first factor above. Alter ego and privity are two distinct concepts – they are not synonymous. While it may be that an alter ego relationship necessarily establishes privity, *see IMP Int'l v. Zibo Zhongshi Green Biotech Co.*, No. EDCV 14-1339 JGB (DTBx), 2015 U.S. Dist. LEXIS 190451, at *12-13 (C.D. Cal. Mar. 20, 2015) (indicating that an alter ego relationship establishes privity for purposes of res judicata); *cf. Bates v. Jones*, 902 F. Supp. 1080, 1089 (N.D. Cal. 1995) (in discussing res judicata under California law, noting that the doctrine "has been applied against a corporation which was a mere alter ego of an individual party in the first action"), the *converse* is not necessarily true – *i.e.*, a privity relationship does not always equal an alter ego relationship. *See, e.g.*, *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (stating that "we know that B&C-London wholly owns B&C, but 100% control through stock ownership does not by itself make a subsidiary the alter ego of the parent"). To pierce the corporate veil under the alter ego doctrine, more must be shown as further discussed below.

With respect to any contention that MLC failed to exercise diligence, it is noteworthy that MLC *did* try to sue the Micron Subs in *MLC I*, but Judge Illston *denied* MLC's motion to add the Micron Subs as defendants – and even indicated that MLC should sue the Micron Subs in a different lawsuit. *See* MLC I (Docket No. 288) (Order at 2-3). This fact would seem to weigh against application of the claim-splitting doctrine.

12

The Micron Subs protest, however, that Judge Illston might have ruled differently had MLC with diligence tried to bring the Micron Subs into *MLC I* earlier in the litigation (rather than near the close of fact discovery). In response, MLC does not dispute that it generally knew about the Micron Subs and their relationship with Micron during the pendency of *MLC I*. MLC argues, however, it was not on notice (until late in the litigation in *MLC I*) that Micron disavowed responsibility for a significant portion of claimed damages on the basis that any damages would be attributable to the Micron Subs rather than Micron itself. Thus, it had no substantial reason to join the Micron Subs.

Similar to above, these circumstances present a factual dispute (*i.e.*, regarding Micron's diligence) that cannot be resolved at the 12(b)(6) phase of proceedings. Resolution may depend in part on, *e.g.*, when MLC began to seek discovery on Micron's financial information and sales data and whether Micron was evasive in responding or otherwise concealed information from MLC. *Cf. Doe*, 985 F.2d at 914 (7th Cir. 1993) (stating that, "[i]f the plaintiff is unaware of facts when filing a complaint, res judicata will not bar subsequent litigation" but "a plaintiff will be precluded from raising these facts later if, by exercising due diligence, he or she could have discovered the relevant information before filing the initial suit"); *Dixon*, 2011 U.S. Dist. LEXIS 76052, at *13 (N.D. Cal. July 14, 2011) (noting that "[r]es judicata includes claims that 'should have been raised in earlier litigation'" and "what matters is if the party could have determined the issue through 'diligent discovery'[;] [a] party's own ignorance will only 'avoid the bar of res judicata' when that ignorance was caused by the 'misrepresentation or concealment of the opposing party'").

> c.  <u>Summary</u>

For the foregoing reasons, the Court must deny the Moving Defendants' Rule 12(b)(6) motion as to whether MLC has engaged in improper claim splitting by suing the Micron Subs, either for infringement based on the L94 or based on the 13 Design IDs at issue in *MLC I*.

B.  <u>Collateral Attack</u>

The Moving Defendants argue that, even if the Court cannot decide the claim splitting issue now, they are still entitled to a dismissal because MLC's lawsuit here represents a collateral attack on two orders issued by Judge Illston in *MLC I*: (1) the order holding that MLC had failed

United States District Court
Northern District of California

to make a showing that Micron could be held liable for the sales of the Micron Subs, *i.e.*, based on an alter ego theory, *see MLC I* (Docket No. 596) (order), and (2) the order limiting the scope of the accused products to those products based on the 13 Design IDs (and not other Design IDs, which would implicitly include the L94). *See MLC I* (Docket No. 291) (order).

The argument is without merit. A collateral attack is a concern only where there has been a final judgment in the first lawsuit. *See, e.g.*, *Snell v. Cleveland, Inc.*, 316 F.3d 822, 827 (9th Cir. 2002) (stating that "'[t]he social interest in expedition and finality in litigation' weighs strongly against collateral attacks on final judgments"); *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (stating that "[t]he collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts"). Here, there is no dispute that *MLC I* is still a pending case without any final judgment. Therefore, the Moving Defendants cannot invoke any collateral attack doctrine as a basis for dismissal.

C.    Damages

The Moving Defendants argue that, even if the Court does not dismiss the claims against them based on the claim-splitting and/or collateral attack doctrines, dismissal is still appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief under the Patent Act. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

The Patent Act contains the following provision related to damages.

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . , or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). In essence, "[s]ection 287(a) provides that absent marking, a patentee may not recover damages without proof that 'the infringer was notified of the infringement.'" *Amsted*

14

*Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186 (Fed. Cir. 1994); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (noting that marking essentially constitutes constructive notice).

In the case at bar, there appears to be no dispute that the '571 patent expired back on June 9, 2015. *See* Micron Reply at 11 (identifying patent expiration date). Thus, in order for MLC to obtain damages, it must show that there was either (1) marking prior to June 9, 2015, or (2) notice of infringement prior to June 9, 2015. According to the Moving Defendants, MLC has failed to adequately allege either marking *or* notice, and therefore, the claims for damages must be dismissed.

### 1. Marking

According to MLC, the marking requirement in § 287 was never triggered because, as alleged in the FAC, MLC itself never "made or sold products covered by the '571 Patent." FAC ¶ 68. MLC also alleges that it "is unaware of any evidence that any licensee has sold products after the date of their respective licenses that required marking during the damages period [*i.e.*, prior to June 9, 2015]." FAC ¶ 68.

The moving defendants do not challenge MLC's allegation that MLC itself never made or sold products covered by the '571 patent. Instead, they contend that MLC's claim that its licensees never made or sold products requiring marking during the damages period cannot be given any credit – even at the 12(b)(6) phase of proceeding. If MLC's licensees sold products that would have infringed (absent the license) the '571 Patent during the damage period, it must be marked.

As discussed at the hearing on the motions to dismiss, there is a factual dispute as to whether MLC's licensees, such as Hynix or Toshiba, sold products that should have been marked. While there seems to be no dispute that Hynix or Toshiba entered into license agreements with MLC, those license agreements apparently covered a portfolio of patents, not just the patent at issue (*i.e.*, the '571 patent); thus, there is a factual question whether Hynix or Toshiba made products that would have infringed the '571 patent specifically absent the licenses.

At the hearing, the Moving Defendants asserted that MLC should be judicially estopped

15

United States District Court
Northern District of California

from asserting that its licensees were not required to mark, because in *MLC I*, MLC took the position that its licensees' products did infringe. *See also* Micron Reply at 11 (arguing that MLC was taking a position here "flatly inconsistent with its representations made to the Court and to the parties" in *MLC I*). But the Court declines to address the judicial estoppel argument – at least at this particular juncture – given that the Moving Defendants did not clearly and unequivocally make the argument in their papers.[4] Moreover, at the hearing, they did not address all of the elements of judicial estoppel. *See, e.g.*, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position."); *Interstate Fire & Cas. Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998) ("Judicial estoppel precludes a party from taking inconsistent positions in the same litigation. A majority of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent statement, and we have recently adopted that rule."). The Court notes with concern that its expert did make a damages calculation in *MLC I* assuming that the licensees' products did infringe. The Court admonishes MLC it must have a Rule 11, good-faith basis for its belief that its licensees did not need to mark their products.

2.    Notice of Infringement

According to MLC, even if MLC or its licensees did not mark (either because they were not required to or because they were required to but failed to do so), that still is not a bar to damages because MLC gave notice of infringement to both Micron and the Micron Subs and they continued to infringe thereafter. The Court addresses notice to Micron and to the Micron Subs separately.

a.    Notice to Micron

With respect to Micron, MLC has alleged infringement of the '571 patent based on products covered by the L94 Design ID only. In its papers, Micron notes that, per the FAC, MLC did not even learn of the L94 until after discovery had closed in *MLC I*. *See* FAC ¶ 70 ("The New

---

[4] The Moving Defendants addressed judicial estoppel only in the context of the claim-splitting doctrine; they never addressed judicial estoppel in the context of the marking issue.

Micron Products were discovered after the close of discovery in [*MLC I*] . . . .").  "Fact discovery closed on December 14, 2018."  *MLC I* (Docket No. 288) (Order at 2).  Given this timing, Micron contends that it is impossible for MLC to have given notice to Micron that the L94 infringed before the '571 patent expired on June 9, 2015.

In response, MLC argues that when it learned about the L94 is not dispositive.  According to MLC, where a patentee gives notice to a defendant that a particular product or products infringe, the defendant is deemed to have been given notice that *other similar products* also infringe.  *See Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (stating that, "[t]o serve as actual notice, . . . [a] letter must communicate a charge of infringement of specific patents by a specific product or group of products," but, "when the threshold specificity is met, the ensuing discovery of other models and related products may bring those products within the scope of the notice"); *see also K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1379 (Fed. Cir. 2012) (noting that plaintiff gave notice that MP container infringed and that defendant "treated the XP and MP containers as related products" – *e.g.*, "both products will use the same item numbers and . . . most of [defendant's] customers 'will never even notice the change' from the MP to the XP").  MLC maintains: "The FAC adequately pleads that [Micron] was put on notice of a group of infringing products which necessarily includes subsequently released products, such as L94."  Micron Opp'n at 22.  Based on this theory, MLC asserts that Micron had notice of infringement "starting in late 2006" when Micron's predecessor in interest first contacted Micron about the products at issue in *MLC I*.[5]  Micron Consumer Opp'n at 22; *see also* FAC ¶ 61 (alleging first communication).  Alternatively, MLC contends that, at the latest, Micron had notice of infringement when MLC filed *MLC I* in August 2014.  *See* Micron Opp'n at 21.

Micron does not dispute the Federal Circuit's holding in *Funai* but protests that MLC

---

[5] The Court does not have before it the actual notice that was given in late 2006.  The FAC contains the following allegation regarding the notice: "The 2006 letter identified, *inter alia*, the '571 Patent and specific claims to the '571 Patent, [Micron's] multi-level cell NAND Flash memory devices as products affected by the '571 Patent, and stating that [Micron] should study the '571 Patent."  FAC ¶ 61.

cannot claim that the L94 products are *similar* to the products at issue in *MLC I* for notice purposes when it has staked out the position that the L94 products are *different* from the products at issue in *MLC I* in arguing against claim splitting. *See* FAC ¶ 69 (alleging that "[t]his suit involves new Micron products that infringe the '571 Patent in a new way than those products accused of infringement in [*MLC I*]"). The Court is not unsympathetic to Micron's argument. Nevertheless, at this early juncture in the litigation, the Court cannot conclude as a matter of law that, just because (as alleged in the FAC) the L94 products have a different design from the products at issue in *MLC I*, that automatically means the L94 products are not sufficiently similar for purposes of notice. Ultimately, as noted above, whether the L94 products are sufficiently similar for notice purposes is a question of fact for the jury to decide. *See Novo Nordisk A/S v. Becton Dickinson*, 96 F. Supp. 2d 309, 320 (S.D.N.Y. 2000) ("[T]he notice requirement under § 287 is treated flexibly – as a question of fact for the jury."); *cf. Iron Oak Techs., LLC v. Fujitsu Am., Inc.*, No. 3:18-md-2835-M, 2018 U.S. Dist. LEXIS 210938, at *13-14 (N.D. Tex. Dec. 14, 2018) ("In *Funai* and *K-TEC*, the Federal Circuit made clear that a notice letter is not required to specifically identify every allegedly infringing product, and that notice may be found for unidentified products if the scope of the alleged infringement described by the patent holder is sufficient to cover the unidentified products. Thus, the inquiry is not whether an accused product is identified by name, but rather whether notice to the alleged infringer provided information sufficient to apprise the infringer of the patent(s) in issue and the nature of the alleged infringement of it.").

> b. Notice to Micron Subs

For the Micron Subs, MLC claims infringement based on the L94 products and on the products at issue in *MLC I*.

The Micron Subs contend that, even if there is a factual dispute regarding the L94 products, there is still a problem with notice (both as to the L94 products and the products at issue in *MLC I*) because notice of infringement was given to Micron only, and not to them specifically. In response, MLC makes two arguments: (1) notice to Micron can constitute notice to the Micron Subs because the companies are alter egos (as alleged in the FAC) and (2) even in the absence of

an alter-ego relationship, Micron and the Micron Subs "share the same offices [and] the same counsel and legal department" (as alleged in the FAC) such that it can plausibly inferred that "notice sent to [Micron's] legal department also necessarily placed [the Micron Subs] on actual notice." Micron Consumer Opp'n at 21.

The problem with MLC's second argument is that (as alleged in the FAC) notice was given that *Micron* infringed – not that the Micron Subs or even any entity affiliated with Micron, infringed. *See* 35 U.S.C. § 287 ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the *infringer* was notified of the infringement and continued to infringe thereafter . . . .") (emphasis added); *Amsted*, 24 F.3d at 187 ("Amsted . . . did not give Buckeye notice for purposes of section 287 until its 1989 letter, which specifically charged *Buckeye* with infringement and specified an infringing device.") (emphasis added); *cf id.* at 187 (stating that "[i]t is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement[;] [t]he correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer"). That being the case, notice to the Micron Subs turns on whether MLC has alleged enough to support alter ego liability. In other words, given the allegations in the operative complaint, is it plausible that the Micron Subs are alter egos of Micron?

i.      Law on Alter Ego

Where two companies are affiliated – *e.g.*, a parent and a subsidiary – liability of one is not automatically imputed to the other. *See Ranza v. Nike*, 793 F.3d 1059, 1070 (stating that, "[a]s a general principle, corporate separateness insulates a parents corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary"). "However, in certain limited circumstances" – *e.g.*, where there is an alter ego relationship – "the veil separating affiliated entities may be pierced to impute liability from one entity to the other." *Id.* at 1071.

> To satisfy the alter ego test, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" [In the parent-subsidiary context,] [t]he "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the

> latter the mere instrumentality of the former." This test envisions pervasive control over the subsidiary, such as when a parent corporation "dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of day-to-day operation." Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Id.* at 1073.

### ii. "Lumping" of Defendants

As an initial matter, the Micron Subs argue that MLC has failed to adequately allege that they have an alter ego relationship with Micron because MLC has simply lumped together all of Micron's subsidiaries or affiliated entities and made no effort to explain how each one, on its own terms, is an alter ego of Micron. The Micron Subs' "lumping" argument is not without merit. As indicated above, whether a parent and subsidiary (or affiliated entity) have an alter ego relationship turns on the specific level of control the former exercises over the latter. That being the case, it is problematic for a plaintiff to lump together multiple defendants in asserting alter ego. On the other hand, the Court is reluctant to hold that lumping is always improper in the alter ego context – *i.e.*, it is possible that, in certain factual situations, lumping may be warranted. *Cf. In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 989-90 (N.D. Cal. 2018) (where defendant-companies argued that plaintiffs failed to "pinpoint what each company's alleged misconduct was," acknowledging that, "in general, 'lumping' of defendants is not permissible," but noting that "Plaintiffs have made allegations explaining why it is appropriate in the instant case, at least at this stage of the proceedings" – *i.e.*, "Plaintiffs have essentially been forced to lump the Bosch companies because the Bosch Defendants have chosen to operate a specific way").

For purposes of the instant case, the Court need not definitively rule on the "lumping" problem because there are other deficiencies in the FAC with respect to the issue of alter ego.

### iii. Unity of Interest

As noted above, the first prong of the alter ego test is unity of interest – *i.e.*, "'(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist.'" *Ranza*, 793 F.3d at 1073. As noted above, in the parent-subsidiary context, the unity-of-interest prong "envisions pervasive control over the subsidiary." *Id.* The unity-of-

interest prong is not met where a plaintiff simply shows "'an active parent corporation involved directly in decision-making about its subsidiaries' holdings,' but each entity 'observe[s] all of the corporate formalities necessary to maintain corporate separateness.'" *Id.*

In the instant case, MLC claims that there is an alter ego relationship between Micron and its subsidiaries because, *e.g.*:

- Micron and the subsidiaries present themselves to the public as a single entity under the "Micron" brand name, *see* FAC ¶ 41;

- Micron submits to the SEC consolidated filings that cover both itself and its subsidiaries and refers to itself and its subsidiaries as, *e.g.*, "we," *see* FAC ¶ 24, *see also* FAC ¶ 35 (referring to consolidated financial information in the SEC filings);

- Micron and the subsidiaries have "a single set of executive officers and directors," *see* FAC ¶ 33;

- Micron and the subsidiaries have some employees who overlap, *see* FAC ¶ 42;

- Micron and the subsidiaries have consolidated financial statements, *see* FAC ¶ 34;

- Micron provides financial support, credit, and capital to the subsidiaries, *see* FAC ¶ 36;

- Micron guarantees loans and debt obligations for the subsidiaries, *see* FAC ¶ 36;

- Micron provides legal support for the subsidiaries, *see* FAC ¶ 39; and

- Micron and the subsidiaries rely on one another to develop, make, and sell MLC NAND Flash memory devices. *See* FAC ¶¶ 25-26, 28-29.

But nothing about the above suggests that Micron, as the parent, is exercising pervasive control over the subsidiaries; the above is consistent with an ordinary parent-subsidiary relationship. *Cf. Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (noting that "a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status'"; adding that an alter ego relationship "is typified by parental control of the subsidiary's internal affairs or daily operations"). In *Ranza*, the Ninth Circuit found no pervasive control even though the parent company there was "heavily involved in [the subsidiary's] operations" – *e.g.*, exercising control

over the subsidiary's overall budget, establishing general human resource policies for both the parent and the subsidiary, being involved in some hiring decisions of the subsidiary, operating information tracking systems that all subsidiaries used, ensuring consistent marketing of the Nike brand, and requiring some subsidiary employees to report to parent supervisors. *See also Calvert v. Huckins*, 875 F. Supp. 674, 678-79 (E.D. Cal. 1995) (rejecting alter ego relationship even though two companies had ownership interests in a third, there were "some interlocking directors and officers," one company incorporated another's figures into its financial reports, one company guaranteed at least one promissory note issued by another, and the companies had the same legal counsel).

The Court acknowledges that MLC has tried to supplement the above allegations with allegations that Micron "directs and controls the activities and operations of [its] Subsidiaries," FAC ¶ 32, and that the subsidiaries "are inadequately capitalized absent the financial support of [Micron]," FAC ¶ 32, and "would be insolvent but for the financial support and guarantees from [Micron]." FAC ¶ 37. But tellingly, these latter allegations are conclusory in nature. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (stating that "[c]onclusory allegations of alter ego status are insufficient to state a claim[;] [r]ather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each") (internal quotation marks omitted).

The most specific allegation that MLC makes is that Micron has provided large guarantees for its subsidiaries. *See, e.g.*, FAC ¶ 38 (alleging that Micron "has guaranteed over $600 million of debt obligations of its subsidiaries as of August 28, 2014" and further "had guaranteed credit facilities for its subsidiaries that provide over $400 million in financing"). But MLC appears to have aggregated guarantees made for all subsidiaries collectively; thus, it is not surprising that the size of the guarantees collectively is large. More fundamentally, MLC has failed to explain *how* this fact demonstrates the subsidiaries were undercapitalized or insolvent. *Compare, e.g.*, *Slottow v. American Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1360 (9th Cir. 1993) (indicating that capitalization of a company was inadequate where its initial capitalization was $500,000, which was "woefully inadequate for a corporation that handled trust agreements of the magnitude

involved here"); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1543 (9th Cir.1988) (where the plaintiff argued that "Ethridge [an individual] was the alter ego of Aqualec and could be held individually liable for Aqualec's debts," noting that Aqualec was undercapitalized as it had "no assets and most of its capitalization came from Ethridge"); *see also Unocal*, 248 F.3d at 927 (rejecting alter ego in spite of parent providing "loans and other types of financing to subsidiaries"; taking note of a Delaware case where the following was found insufficient to establish alter ego: "blurring corporate separateness in language of annual report, overlap of boards of directors, parental approval of large capital expenditures, and parental guaranty of third-party loans to subsidiary").

In sum, the specific factors needed to establish alter ego have not been sufficiently and specifically alleged.

### 3. Summary

With respect to Micron, the Court denies the 12(b)(6) motion for failure to state a claim for damages. There are questions of fact as to whether MLC's licensees were required to mark. There are also questions of fact as to whether Micron was given notice of infringement with respect to the L94 products.

However, with respect to the Micron Subs, the Court grants the 12(b)(6) motion for failure to state a claim for damages. MLC has failed to allege that it gave notice to the Micron Subs specifically (as opposed to Micron). In addition, MLC has failed to make sufficient allegations that Micron and the Micron Subs are alter egos such that notice to the former may be imputed to the latter. The Court thus dismisses the Micron Subs, but gives MLC leave to amend if it can, in good faith, make additional factual allegations in support of alter ego liability.

### D. Personal Jurisdiction and Venue

Although the Court is dismissing the Micron Subs based on a failure to state a claim for damages under the Patent Act, it still addresses the Micron Subs' arguments on personal jurisdiction and venue, as they provide an independent ground for dismissal.

### 1. Personal Jurisdiction

Only Micron Semiconductor moves for dismissal based on lack of personal jurisdiction.

There is no dispute that Micron Semiconductor is an Idaho corporation with a principal place of business in Idaho. *See* FAC ¶ 5.

In its papers, Micron Semiconductor argues that there are insufficient allegations of personal jurisdiction in the FAC because MLC has essentially lumped together *all* Micron Defendants in the case (not just the three Moving Defendants). Micron Semiconductor argues that this is improper – *i.e.*, MLC must address each defendant's contacts with California on an individual basis. *See, e.g.*, *Skurkis v. Montelongo*, No. 16-cv-0972 YGR, 2016 U.S. Dist. LEXIS 122474, at *13 (N.D. Cal. Sep. 9, 2016) (stating that "the Court must determine whether plaintiffs have made a *prima facie* case of personal jurisdiction as to each defendant based on *each* defendant's *own* contacts with California" and that "[t]his inquiry requires an analysis of each defendant's contacts in light of plaintiffs' claims").

Micron Semiconductor's argument has merit. In ¶ 14 of the FAC, MLC alleges as follows:

> This Court has personal jurisdiction over the [Micron] Defendants. The [Micron] Defendants, and each of them, have conducted, and do conduct business within the State of California. The MTI Defendants, and each of them, directly or indirectly through intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, and advertise products in . . . the Northern District of California. The [Micron] Defendants, and each of them, purposefully and voluntarily sold one or more of their infringing products with the expectation that they will be purchased by consumers in the Northern District of California. These infringing products have been and continue to be purchased by consumers in the Northern District of California.

FAC ¶ 14; *see also* FAC ¶ 15 (making similar allegations). Clearly, MLC has lumped and made no attempt to differentiate among any of the Micron Defendants.

MLC argues still that the Court should not be concerned about the "lumping" above for two reasons. First, it argues that the Court can take judicial notice of Micron's 10-K filing with the SEC which indicates that Micron Semiconductor also does business as Micron Consumer and Crucial Technology. *See* Opp'n at 23; Marino Decl., Exs. A-B (excerpts from Micron's 10-K). But this fact, in and of itself, does not amount to much. No matter what *name* Micron Semiconductor might use, MLC still needs to show that Micron Semiconductor itself has contacts with California. The Court acknowledges that Micron Consumer is also the name of one of the

24

defendants in this case (in fact, one of the Moving Defendants), and, per the FAC, that specific defendant has its principal place of business in California. *See* FAC ¶ 4. However, that does not necessarily mean that Micron Semiconductor, by using the Micron Consumer name, necessarily does business in California. More specifics about the relationship must be alleged.

Second, MLC argues that there is clearly personal jurisdiction over Micron, which has its principal place of business in California, *see* FAC ¶ 3, and, because Micron and Micron Semiconductor are alter egos of one another, Micron's California contacts can be imputed to Micron Semiconductor. Here, MLC is correct that alter ego may be used as a basis for establishing personal jurisdiction (and not just liability). *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (stating that the Supreme Court's decision in *Daimler* invalidated an agency test that the Ninth Circuit had used for general jurisdiction but not the alter ego test; "'the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate'"). But, as discussed above, MLC has failed to adequately allege an alter ego relationship between Micron Semiconductor and Micron.

The Court therefore grants Micron Semiconductor's motion to dismiss based on lack of personal jurisdiction. MLC, however, has leave to amend to correct the deficiencies in its jurisdictional allegations if it can do so in good faith.

2. <u>Venue</u>

Both Micron Subs (*i.e.*, Micron Semiconductor and Micron Consumer) move for a dismissal on the basis that there are insufficient allegations to support venue in this District.

In patent infringement cases, "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

In the instant case, there is no dispute that neither defendant resides in California. The Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). Micron Semiconductor is incorporated in Idaho, and Micron Consumer is

incorporated in Delaware, *see* FAC ¶¶ 4-5; thus, neither defendant resides in California.

The only question, therefore, is whether MLC has made sufficient allegations that the two defendants (1) committed acts of infringement in the District and (2) have regular and established places of business in the District. On this question, the Micron Subs make an argument similar to that above – *i.e.*, that there are insufficient allegations to support venue because MLC has lumped all of the Micron Defendants (not just the Moving Defendants) together.

As above, the Court agrees that MLC has engaged in improper "lumping." MLC has made no attempt to differentiate among the various Micron Defendants when it comes to venue. Moreover, even if the Micron Subs contributed to *Micron's* infringing activity in this District, that would not be enough to establish venue under § 1400(b). First, as noted above, § 1400(b) requires that a defendant commit an act of infringement in the District; thus, even if the theory was contributory infringement, the contributory act would still have to occur in this District. Second, § 1400(b) also requires that a defendant have a regular and established business in this District. *See generally In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (noting that there are "three general requirements relevant to this inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant"). Here, MLC has not made any attempt to make any nonconclusory allegations of a regular and established business by either of the Micron Subs. *See, e.g.*, FAC ¶ 15 (alleging, in conclusory terms, that Micron and the two subsidiaries "have established places of business in this District").

The only possible saving grace for MLC is its alter ego theory – *i.e.*, that the Micron and the Micron Subs are alter egos of each other. Alter ego may be used as a basis for imputing "contacts" for purposes of venue. *See 3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (stating that "piercing the corporate veil is appropriate in order to establish venue under the patent venue statutes"); *UCB, Inc. v. Mylan Techs., Inc.*, No. CV 17-322-LPS, 2017 U.S. Dist. LEXIS 218883, at *9 (D. Del. Dec. 1, 2017) (stating that "[i]t does not appear that *Cray* disturbed the prior holding of the Federal Circuit . . . that 'venue in a patent infringement case [may be] proper with regard to one corporation by virtue of the acts of another, intimately connected,

corporation'"). Nevertheless, as discussed above, MLC has failed to adequately allege an alter ego relationship and therefore the Court finds that there are insufficient allegations to support venue as to the Micron Subs.

The motion to dismiss based on lack of venue is granted, but with leave to amend.

E.      Alter Ego Liability

As reflected above, MLC's allegations on alter ego are relevant to several issues – *e.g.*, the claim for damages against the Micron Subs, personal jurisdiction as to Micron Semiconductor, and venue as to both Micron Subs. To the extent MLC takes any other position predicated on alter ego (*e.g.*, that the Micron Subs are liable for Micron's actions vis-à-vis the L94 products), that position is also lacking for the reasons discussed above.

### III.      CONCLUSION

For the foregoing reasons, the motions to dismiss are granted in part and denied in part. More specifically:

- The motion to dismiss all Moving Defendants based on the claim-splitting doctrine is denied without prejudice.

- The motion to dismiss all Moving Defendants based on a collateral attack is denied.

- The motion to dismiss Micron based on a failure to state a claim for damages is denied without prejudice.

- The motion to dismiss the Micron Subs based on a failure to state a claim for damages is granted, but with leave to amend.

- The motion to dismiss Micron Semiconductor based on lack of personal jurisdiction is granted, but with leave to amend.

- The motion to dismiss the Micron Subs based on improper venue is granted, but with leave to amend.

Where the Court has given MLC leave to amend, *i.e.*, to correct the deficiencies identified above, MLC has until thirty (30) days from the date of this order to file a second amended complaint.

Because the Court is giving MLC an opportunity to file a second amended complaint, it finds IM Flash's motion to dismiss the FAC moot.  However, MLC shall bear in mind that many of the arguments made in IM Flash's motion are the same as those raised in the Moving Defendants' motions.  That being the case, MLC is advised to enhance its allegations vis-à-vis IM Flash consistent with the above.

Neither the Moving Defendants nor IM Flash is precluded from moving to dismiss the second amended complaint once filed.  Micros Europe, Ltd. Has moved to dismiss the FAC.  All other Micron Defendants shall have three weeks after the filing of the second amended complaint to respond to the pleading.

This order disposes of Docket Nos. 33, 38, 39, and 64.

**IT IS SO ORDERED**.

Dated: October 8, 2019

_____
EDWARD M. CHEN
United States District Judge